**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiffs, FLSA Collective*
*Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

YAFEI ZHU and LIHENG XU,
*on behalf of themselves, FLSA Collective Plaintiffs,*
*and the Class,*

                  Plaintiffs,

    v.

BK21 TEA HOUSE INC.
    d/b/a PRINCE DESSERT & TEA ROOM,
BOWERY TEA HOUSE INC.
    d/b/a PRINCE TEA HOUSE,
CHEUNG MAN LEE,
YI CHUN CHEN, and
HANG ZIONG ZHANG,

                Defendants.

---

Case No.:

**CLASS AND COLLECTIVE**
**ACTION COMPLAINT**

Jury Trial Demanded

---

Plaintiffs YAFEI ZHU and LIHENG XU (hereinafter, "Plaintiffs"), on behalf of themselves and others similarly situated, by and through their undersigned attorneys, hereby file this Class and Collective Action Complaint against Defendants, BK21 TEA HOUSE INC. d/b/a PRINCE DESSERT & TEA ROOM, BOWERY TEA HOUSE INC. d/b/a PRINCE TEA HOUSE, (the "Corporate Defendants"), CHEUNG MAN LEE, YI CHUN CHEN, and HANG ZIONG

1

ZHANG ("Individual Defendants") (each individually, "Defendant" or, collectively, "Defendants") and states as follows:

## INTRODUCTION

1.    Plaintiff YAFEI ZHU ("Plaintiff ZHU") alleges, pursuant to Fair Labor Standards Act as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), that Plaintiff ZHU, FLSA Collective Plaintiffs and similarly situated individuals are entitled to recover from Defendants: (i) unpaid minimum wages due to Defendants' failure to pay *any* base hourly wage, (ii) unpaid minimum wages due to invalid tip credit, (iii) liquidated damages, and (iv) attorney's fees and costs.

2.    Plaintiff ZHU and Plaintiff LIHENG XU ("Plaintiff XU") further allege that, pursuant to New York Labor Law ("NYLL"), Plaintiffs and others similarly situated are entitled to recover from Defendants: (i) unpaid statutory minimum wages due to Defendants' failure to pay *any* base hourly wage, (ii) unpaid minimum wages due to invalid tip credit, (iii) unpaid spread of hours premium, (iv) unlawfully retained gratuities, (v) liquidated damages due to late payment of wages, (vi) wage theft due to uncompensated training time, (vii) statutory penalties, (viii) liquidated damages for willful conduct, and (ix) attorney's fees and costs.

## JURISDICTION AND VENUE

3.    This Court has jurisdiction over this controversy, pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

4.    Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

5.    At all relevant times herein, Plaintiff, YAFEI ZHU, was and is a resident of Kings County, New York.

6.    At all relevant times herein, Plaintiff, LIHENG XU, was and is a resident of Kings County, New York.

7.    At all relevant times, Defendants collectively own and operate a chain of bakery and tea houses called "Prince Tea House" in the following locations in New York City through the following corporate entities:

  i.  Flushing Tea House Inc. (previously Prince Dessert and Tea Room Inc.) - 36-39 Prince St., Flushing, NY 11354; ("Flushing Tea House")

  ii.  Brooklyn Tea House Inc. (previously Prince Dessert and Tea II Room Inc.) - 6122 7th Ave. Brooklyn, NY 11220; ("7th Ave Tea House")

  iii.  BK21 Tea House Inc. (Prince Dessert & Tea Room V Inc.) - 8510 21st Ave. Brooklyn, NY 11214; ("21st Ave Tea House")

  iv.  Bowery Tea House Inc. - 134 Bowery St., New York, NY 10013; ("Bowery Tea House") and

  v.  E Village Tea House Inc. - 204 East 10th St., New York, NY 10003; ("East Village Tea House") (collectively, the "Tea Houses")

8.    The Tea Houses are operated as a single integrated enterprise under the common control of Defendants. Specifically, the Tea Houses are engaged in related activities, share common ownership, and have a common business purpose.

  i.  The Tea Houses are under the control of Corporate Defendants and Individual Defendants. Specifically, Individual Defendants CHEUNG MAN LEE, YI CHUN CHEN, and HANG ZIONG ZHANG own and operate all the Tea Houses.

3

ii. Individual Defendants are identified as principals in some of the Tea Houses' liquor licenses. *See* **Exhibit A**, the Restaurants' liquor licenses**.**

iii. Prince Tea House Franchising LLC is the franchisor charged with the expansion of the franchise "Prince Tea House" and the selection process of new franchisees. Prince Tea House Franchising LLC disclosed that it does not have any parent company or predecessor. However, Prince Tea House Franchising LLC identified the foregoing corporate entities operating the Tea Houses as "affiliates" and refers to the foregoing Tea Houses as "company-owned locations." *See* **Exhibit B**, the 2021 Franchise Disclosure Agreement**.**

iv. All Tea Houses share financial resources. According to Prince Tea House Franchising LLC's 2021 Disclosure Agreement, all potential franchisees of "Prince Tea House" must pay $75,000 to $100,000 to Prince Tea House Franchising LLC or to an affiliate as part of the potential franchisee's investment. *See* **Exhibit B.**

v. All Tea Houses obtain their supplies from the same company, Prince Dessert & Tea Room USA, Inc., which is also an affiliate of Prince Tea House Franchising LLC. Prince Dessert & Tea Room USA, Inc. is the Tea Houses' "central bakery, kitchen and commissary." *See* **Exhibit B.**

vi. The Tea Houses have a common website, available at https://www.princeteahouse.com/our-story.

vii. The Tea Houses are in the same business of providing food service and hosting private events such as weddings, receptions, and corporate events.

4

*See* **Exhibit C**, the Tea Houses' common website**,** also available at: https://www.princeteahouse.com/private-event.

viii.  The Tea Houses offer the same French-Asian cuisine and menu including tea, desserts, pastries, waffles, appetizers and sandwiches. *See* **Exhibit C**, the Tea Houses' common website**,** also available at: https://www.princeteahouse.com/copy-of-signature-menu.

ix.  All Tea House locations are advertised on the same webpage. Moreover, All Tea Houses share a common look and feel. *See* **Exhibit C**, the Tea Houses' common website**,** also available at: https://www.princeteahouse.com/locations.

x.  All Tea Houses share a common career page through the common website where potential employees apply to a common human resources department. *See* **Exhibit C**, the Tea Houses' common website**,** also available at: https://www.princeteahouse.com/career.

xi.  All Tea Houses can be reached through the common "Contact" webpage in the common website. *See* **Exhibit C**, the Tea Houses' common website**,** also available at: https://www.princeteahouse.com/contact.

xii.  All Tea Houses utilize an online contactless ordering system. *See* **Exhibit C**, the Tea Houses' common website**,** also available at: http://princeteahouseorders.com/.

xiii.  All Tea House locations are advertised on their common social media account, specifically Instagram. *See* **Exhibit D**, the Tea Houses' common

Instagram          account,          also          available          at:
https://www.instagram.com/princeteahouse/?hl=en.

xiv.   All Tea Houses share the same payroll policies and methods and have a
single, centralized system of labor relations for employees. This is evident
from the fact that Plaintiffs ZHU and XU worked at different Tea House
locations yet suffered from the same wage and hour violations.

9.   Corporate Defendant, BK21 TEA HOUSE INC. d/b/a PRINCE DESSERT & TEA ROOM, is a domestic business corporation organized under the laws of New York, with a principal place of business and an address for service of process located at 8510 21st Ave. Brooklyn, NY 11214. Corporate Defendant BK21 TEA HOUSE INC. is one of the affiliates of Prince Tea House Franchising LLC. *See* **Exhibit B**. Corporate Defendant BK21 TEA HOUSE INC. owns and operates the 21st Ave. Tea House where Plaintiff XU was employed from in or around September 2019 to in or around March 2020.

10.   Corporate Defendant, BOWERY TEA HOUSE INC. d/b/a PRINCE TEA HOUSE, is a domestic business corporation organized under the laws of New York, with a principal place of business and an address for service of process located at 134 Bowery St., New York, NY 10013. Corporate Defendant BOWERY TEA HOUSE INC. is one of the affiliates of Prince Tea House Franchising LLC. *See* **Exhibit B**. Corporate Defendant BOWERY TEA HOUSE INC. owns and operates the Bowery Tea House where Plaintiff ZHU was employed from on or around February 7, 2024 to on or around March 27, 2024.

11.   Individual Defendant CHEUNG MAN LEE is the founder, owner and executive officer of Corporate Defendants and has operational control of Corporate Defendants. Individual Defendant CHEUNG MAN LEE exercises the power to, and also delegates to managers and

6

supervisors the power to: (i) fire and hire employees; (ii) supervise and control employee work schedules; (iii) determine the rate and method of pay; (iv) maintain employment records; and (v) otherwise affect the quality, terms and conditions of employment for Plaintiffs, FLSA Collective Plaintiffs, and Class members. Individual Defendant CHEUNG MAN LEE has authority over all employee-related decisions, including payroll, personnel, and wage and hour policies concerning Plaintiffs, FLSA Collective Plaintiffs, and Class members. Individual Defendant CHEUNG MAN LEE additionally exercises the authority to fire and hire, supervise and control work schedules, determine rate and method of pay, maintain employment records, and otherwise affect the terms and conditions of employment for managerial employees who directly supervise Plaintiffs, FLSA Collective Plaintiffs, and Class members. Individual Defendant CHEUNG MAN LEE ensures that managers implement Defendants' employment policies and pay practices and directs employees to effectively complete their job duties so that Corporate Defendants are operating efficiently and profitably.

12.     Individual Defendant YI CHUN CHEN is the founder, owner and executive officer of Corporate Defendants and has operational control of Corporate Defendants. Individual Defendant YI CHUN CHEN exercises the power to, and also delegates to managers and supervisors the power to: (i) fire and hire employees; (ii) supervise and control employee work schedules; (iii) determine the rate and method of pay; (iv) maintain employment records; and (v) otherwise affect the quality, terms and conditions of employment for Plaintiffs, FLSA Collective Plaintiffs, and Class members. Individual Defendant YI CHUN CHEN has authority over all employee-related decisions, including payroll, personnel, and wage and hour policies concerning Plaintiffs, FLSA Collective Plaintiffs, and Class members. Individual Defendant YI CHUN CHEN additionally exercises the authority to fire and hire, supervise and control work schedules,

determine rate and method of pay, maintain employment records, and otherwise affect the terms and conditions of employment for managerial employees who directly supervise Plaintiffs, FLSA Collective Plaintiffs, and Class members. Individual Defendant YI CHUN CHEN ensures that managers implement Defendants' employment policies and pay practices and directs employees to effectively complete their job duties so that Corporate Defendants are operating efficiently and profitably.

13.    Individual Defendant HANG ZIONG ZHANG is the founder, owner and executive officer of Corporate Defendants and has operational control of Corporate Defendants. Individual Defendant HANG ZIONG ZHANG exercises the power to, and also delegates to managers and supervisors the power to: (i) fire and hire employees; (ii) supervise and control employee work schedules; (iii) determine the rate and method of pay; (iv) maintain employment records; and (v) otherwise affect the quality, terms and conditions of employment for Plaintiffs, FLSA Collective Plaintiffs, and Class members. Individual Defendant HANG ZIONG ZHANG has authority over all employee-related decisions, including payroll, personnel, and wage and hour policies concerning Plaintiffs, FLSA Collective Plaintiffs, and Class members. Individual Defendant HANG ZIONG ZHANG additionally exercises the authority to fire and hire, supervise and control work schedules, determine rate and method of pay, maintain employment records, and otherwise affect the terms and conditions of employment for managerial employees who directly supervise Plaintiffs, FLSA Collective Plaintiffs, and Class members. Individual Defendant HANG ZIONG ZHANG ensures that managers implement Defendants' employment policies and pay practices and directs employees to effectively complete their job duties so that Corporate Defendants are operating efficiently and profitably.

14.    At all relevant times, each Corporate Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of FLSA.

15.    At all relevant times, the work performed by Plaintiffs, FLSA Collective Plaintiffs, and Class members was directly essential to the business operated by Defendants.

16.    At all relevant times, Plaintiffs were Defendants' employees within the meaning of NYLL §§ 2 and 651. At all relevant times, Defendants were Plaintiffs' employers within the meaning of NYLL §§ 2 and 651.

17.    At all relevant times, Defendants employed at least forty (40) employees as defined under the NYLL.

## FLSA COLLECTIVE ACTION ALLEGATIONS

18.    Plaintiff ZHU brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C § 216(b), on behalf of all current and former, non-exempt employees (including, but not limited to, waiters, servers, bartenders, food runners, bussers, hosts, barbacks, sommeliers, delivery persons, cooks, dishwashers, expeditors, food preparers, and porters, among others) employed by Defendants in all their affiliate Tea Houses in New York on or after the date that is six years before the filing of the Complaint in this case as defined herein (herein, "FLSA Collective Plaintiffs").

19. At all relevant times, Plaintiff ZHU and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their proper wages, including tips. The claims of Plaintiff ZHU stated herein are essentially the same as those of the other FLSA Collective Plaintiffs for: (i) failure to pay any base hourly

wages (for tipped FLSA Collective Plaintiffs), (ii) liquidated damages, and (iii) attorney's fees and costs. Further, with respect to tipped employees ("Tipped FLSA Collective Plaintiffs"), Defendants failed to compensate Plaintiff ZHU and Tipped FLSA Collective Plaintiffs the prevailing minimum wages due to misappropriation of tips. Moreover, Defendants were not entitled to take any tip credits under the FLSA because they failed to satisfy all statutory requirements for taking a tip credit.

20.    The claims for relief are properly brought under and maintained as an opt-in collective pursuant to § 16(b) of FLSA, 29 U.S.C. § 216(b). FLSA Collective Plaintiffs are readily ascertainable. The number and identity of the FLSA Collective Plaintiffs are able to be determined from the records of Defendants. The hours assigned and worked, the positions held, and rates of pay for each FLSA Collective Plaintiff are also determined from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily ascertainable from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS

21.    Plaintiffs bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all current and former, non-exempt employees (including, but not limited to, waiters, servers, bartenders, food runners, bussers, hosts, barbacks, sommeliers, delivery persons, cooks, dishwashers, expeditors, food preparers, and porters, among others) employed by Defendants in all their affiliate Tea Houses in New York on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

22.    All said persons, including Plaintiffs, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are able

to be determined from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member are also determined from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

23.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number is based are presently within the sole control of Defendants, and there is no doubt that there are more than forty (40) members of the Class. The Class further includes the following subclasses:

i.      Tipped Subclass which is comprised of all tipped employees employed by Defendants during the relevant statutory period. The Tipped Subclass also number more than forty (40). Plaintiffs ZHU and XU are members of the Class and the Tipped Subclass.

ii.     Late Payment Subclass which is comprised of all employees who were not compensated within seven (7) days of the end of the week in which they earned them in violation of the NYLL. Late Payment Subclass also number more than forty (40). Plaintiff ZHU is also a member of the Late Payment Subclass.

iii.    Spread-of-Hours Subclass which is comprised of all employees who were not compensated spread of hours premium for each workday that exceeded ten (10) hours. The Spread-of-Hours Subclass also number more than forty (40). Plaintiff ZHU is also a member of the Spread-of-Hours Subclass.

24.     Plaintiffs' claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of

the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants including: (i) wage theft due to uncompensated training time, (ii) failing to provide wage and hour notices to Class members upon hiring and as legally required thereafter, (iii) failing to provide proper wage statements for each payment period.

25.     With regard to the Tipped Subclass, Defendants failed to pay Plaintiffs and the Tipped Subclass the prevailing minimum wage due to misappropriating Plaintiffs' and the Tipped Subclass' tips by using it to pay for their wages. Moreover, Defendants are not entitled to claim any tip credit because they failed to meet statutory requirements under NYLL. Plaintiffs and Tipped Subclass are owed the prevailing minimum wage due to Defendants' invalid tip credit allowance, because Defendants: (i) failed to provide proper tip credit notice at hiring and annually thereafter, (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in continuous non-tipped duties which exceed 20% of the total hours worked each workweek, (iii) claimed a tip credit for all continuous periods of time of non-tipped, directly supporting work exceeding 30 minutes, (iv) illegally retained tips, (v) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period, and (vi) failed to keep track of daily tips earned and maintain records thereof.

26.     With regard to the Late Payment Subclass, Defendants failed to compensate Plaintiff ZHU and Late Payment Subclass within seven (7) days of the end of the week in which they earned them in violation of the NYLL.

27.     With regard to the Spread-of-Hours Subclass, Defendants failed to compensate Plaintiff ZHU and Spread-of-Hours Subclass spread of hours premium for each workday that exceeded ten (10) hours.

28.     Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

29.     Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

30.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against the corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for

Defendant and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

31.     Defendants and other employers throughout the state violate New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

32.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

    i.    Whether Defendants employed Plaintiffs and the Class within the meaning of New York Labor Law and applicable state laws;

   ii.    What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiffs and Class members;

  iii.    At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiffs and Class members for their work;

  iv.    Whether Defendants properly compensated Plaintiffs and Class members for all hours worked;

   v.    Whether Defendants operated their business with a policy of failing to pay Plaintiff ZHU and Spread-of-Hours Subclass spread of hours premiums, as required under

NYLL;

vi.  Whether Defendants operated their business with a policy of failing to pay Plaintiffs and Class members the prevailing minimum wage due to misappropriation of tips in violation of the NYLL;

vii. Whether Defendants properly provided notice to Plaintiffs and the Tipped Subclass members that Defendants were taking a tip credit; and

viii. Whether Defendants provided proper tip credit notice to Plaintiffs and the Tipped Subclass members at hiring and annually thereafter.

ix.  Whether Defendants caused Plaintiffs and the Tipped Subclass members to engage in non-tipped duties exceeding twenty percent (20%) of their work shift;

x.   Whether Defendants claimed tip credit for any continuous periods of time of nontipped, directly supporting work exceeding 30 minutes;

xi.  Whether Defendants illegally retained gratuities of Plaintiffs and Tipped Subclass members;

xii. Whether Defendants accurately tracked the amounts of tips earned each day and maintained records thereof;

xiii. Whether Defendants paid Plaintiff ZHU and Late Payment Subclass members their lawful wages timely on a weekly basis as required by NYLL;

xiv. Whether Defendants paid Plaintiff ZHU and Spread-of-Hours Subclass members spread of hours premiums for their shifts exceeding ten (10) hours as required by NYLL;

xv.  Whether Defendants paid Plaintiffs and Class members their lawful wages during their training period;

xvi.    Whether Defendants provided proper wage statements informing the Plaintiffs and

Tipped Subclass members of the amount of tip credit taken for each payment period

and their proper overtime rate of compensation, as required under the NYLL.

xvii.    Whether Defendants provided proper wage and hour notices to Plaintiffs and the

Class members, including, among others, the rate of compensation, overtime rate,

trade name of employer, pursuant to the requirements of NYLL;

xviii.    Whether Defendants provided proper wage notice, at date of hiring and annually

thereafter, to Plaintiffs and the Class members, per requirements of NYLL; and

xix.    Whether Defendants provided Plaintiffs and Class members proper wage

statements with each payment of wages, as required under NYLL.

## STATEMENT OF FACTS

### *Plaintiff Yafei Zhu*

33.    On or about February 6, 2024, Plaintiff ZHU was hired by Defendants to work as a waitress for Defendants' Bowery Tea House restaurant located at 134 Bowery St., New York, NY 10013. Plaintiff ZHU was employed by Defendants until on or about March 27, 2024, when she was terminated by Defendants.

34.    Throughout her employment, Plaintiff ZHU was regularly scheduled to work four to five (5) days per week. About two (2) to three (3) times a week, Plaintiff ZHU was scheduled to work single shifts from 11:00 a.m. to 5:30 p.m. for a total of six and a half (6.5) hours with a thirty-minute lunch break. Plaintiff ZHU was also scheduled to work double shifts throughout her employment two (2) times a week from 11:30 a.m. to 11:00 p.m. for a total of eleven and half (11.5) hours, with a thirty-minute lunch break. Plaintiff ZHU therefore worked for a total of 34 to

40 hours per week. In addition to these scheduled hours, Plaintiff ZHU was often required to work past her scheduled shift for up to fifteen (15) minutes.

35.    Plaintiff ZHU's purported payrate was $65.00 for regular shifts and $130.00 for double shifts.

### Plaintiff Liheng Xu

36.    In or about September 2019, Plaintiff XU was hired by Defendants to work as a waiter for Defendants' 21st Ave Tea House located at 8510 21st Ave. Brooklyn, NY 11214. Plaintiff XU was employed by Defendants until in or about March 2020, when he was terminated by Defendants due to the Covid-19 pandemic.

37.    Throughout his employment, Plaintiff XU was regularly scheduled to work two (2) days per week from 6:00 p.m. to 12:00 a.m. for a total of six (6) hours per day. Plaintiff XU worked for a total of twelve (12) hours per workweek.  In addition to his scheduled hours, Plaintiff XU was required to work past her scheduled shift for up to forty-five (45) minutes. This meant that Plaintiff XU's actual work hours was thirteen and a half (13.5) hours.

38.    Plaintiff XU's purported payrate was $54.00 per shift.

### Plaintiffs' and Tipped Subclass' Claims

39.    Defendants failed to pay Plaintiffs the minimum wage under either FLSA or NYLL. Plaintiff ZHU's supposed base wages  were $65.00 for regular shifts and $130.00 for double shifts. Plaintiff XU's supposed base wages  were $54.00 per shift. In reality, Defendants never actually paid Plaintiffs, FLSA Collective Plaintiffs, and Tipped Subclass members any base wage outside of tips. Instead, Defendants would simply confiscate all their tips and then pay the promised base wages out of those misappropriated wages, labelling whatever remained as "tips." For example, if Plaintiff ZHU earned $80.00 in tips in a regular shift, Defendants would simply say that $65.00 of

17

this sum constituted her base wage for the shift and that the remaining $15.00 constituted her tips. In Plaintiff XU's case, if he earned $60.00 in tips in a regular shift, Defendants would simply say that $54.00 of this sum constituted his base wage for the shift and that the remaining $6.00 constituted his tips. Behind these word games, Plaintiffs, FLSA Collective Plaintiffs, and Tipped Subclass members were working for tips alone and so were not paid the minimum wage under either NYLL or FLSA.

40.    Plaintiffs cannot now be made whole simply with damages consisting of the tipped credit minimum wage that they should have been paid ($10.65 under NYLL and $2.13 under FLSA). That assumes that Defendants would have been entitled to take a tip credit. But, in fact, Defendants lost that entitlement by misappropriating Plaintiffs' tips.

41.    Defendants also lost that entitlement because they failed to provide Plaintiffs with a valid tip credit notice, which is a prerequisite for taking a tip credit under both NYLL and FLSA. NYLL tip credit notices must be written while FLSA tip credit notices may be oral, but both must conform to statutory requirements, and Plaintiffs did not receive any notices of either kind.

42.    Moreover, any notices that Defendants could have given to tipped employees would have been completely fraudulent and hence invalid, as Defendants have completely disregarded the requirements under both NYLL and FLSA that tipped employees receive a base hourly wage that does not come out of misappropriated tips.

43.    Defendants also were not permitted to take a tip credit because Plaintiffs, along with all other tipped employees of Defendants, was required to engage in over two (2) hours or more than twenty percent (20%) of their working time in non-tipped work, including but not limited to, cleaning the entire restaurant, cleaning the restrooms, rolling up napkins, and polishing silverware and glassware (hereinafter the "non-tipped duties"). Plaintiffs, FLSA Collective

Plaintiffs, and Tipped Subclass members furthermore engaged in non-tipped, directly supporting work exceeding 30 minutes.

44.    Plaintiffs observed that all their fellow tipped employees were paid in exactly the same way as them, as described above, meaning that FLSA Collective Plaintiffs, and Tipped Subclass members effectively worked for tips alone.

45.    In addition, Plaintiff XU observed that Individual Defendant YI CHUN CHEN, who did not provide direct customer service, shared in the tips earned by tipped employees by unlawfully participating in the tip pool.  As a result, not only did Plaintiffs, FLSA Collective Plaintiffs, and Tipped Subclass members not receive a base wage, they did not even receive all their tips, which also invalidates Defendants' tip credit.

46.    For all the foregoing reasons, base compensatory damages for Plaintiffs, FLSA Collective Plaintiffs, and Tipped Subclass members is the *non*-tipped minimum wage for each hour worked for Defendants, including the non-tipped overtime minimum wage to the extent applicable.

### *Plaintiff ZHU's and Late Payment Subclass' Claims*

47.    Defendants' violations go beyond the above. While Plaintiff ZHU, FLSA Collective Plaintiffs, and Tipped Subclass members effectively worked for tips alone, without any base wage, they were not actually entitled to physically keep the tips they earned through their shifts. Instead, Defendants would collect all tips and then distribute them on a regular payday.

48.    For Plaintiff ZHU and many other non-exempt employees (both tipped and non-tipped), this regular payday was biweekly, in violation of NYLL § 191, which requires that manual workers be paid weekly. Plaintiff ZHU and all other non-exempt employees were obviously

19

manual workers. Given the nature of restaurant work, they spent well over 25% of their time engaged in physical tasks.

49.     Accordingly, Defendants are liable to Plaintiff ZHU and Late Payment Subclass members for liquidated damages in the amount of late-page wages, plus interest.

### *Plaintiff ZHU's and Spread-of-Hours Subclass' Claims*

50.     Throughout her employment, Plaintiff ZHU worked doubled shifts for at least eleven (11) hours per double shift. Despite working shifts that exceeded ten (10) hours in duration, Plaintiff ZHU was never paid any spread of hours premiums.

51.     Similarly, Spread-of-Hours Subclass members who regularly worked shifts exceeding ten (10) hours in duration were never paid spread of hours premiums.

### *Plaintiffs' and Class Members' Wage Theft Claims*

52.     It was Defendants' policy to require new employees to undergo training. However, Defendants would not pay their new employees during training period. For Plaintiff ZHU, she was required to spend one day training for her future work during the start of her employment. As for Plaintiff XU, he was required to spend three shifts in training. However, Plaintiffs and other trainees were never paid for this time. Defendants are accordingly liable to all Class members for such unpaid wages under NYLL.

### *Plaintiffs' and Class Members' Wage Theft Protection Act Claims*

53.     Plaintiffs and Class members never received any wage notice from Defendants. Plaintiffs and Class members also never received any wage statements from Defendants.

54.     In violation of the Wage Theft Protection Act ("WTPA")—incorporated into NYLL—Defendants knowingly and willfully operated their business with a policy of not

providing wage notices to Plaintiffs and Class members at the beginning of their employment with Defendants.

55.     Defendants further violated the WTPA by failing to provide Plaintiffs and Class members with any wage statement, which the WTPA also requires.

56.     In failing to provide wage statements and notices, Defendants have failed to comply with the law in a manner that entails concrete harm to an interest identified by the New York State legislature. As one court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs*., 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

57.     Here, Defendants' failure goes beyond generating a risk of harm to Plaintiffs and Class members. Defendants' conduct actually harmed Plaintiffs and Class members. Defendants' failure to provide wage notices and paystubs listing the proper rates of pay and the actual hours worked, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiffs' and Class members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law.

Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

58.    Had Defendants provided compliant wage notices and wage statements to Plaintiffs, Plaintiffs would have seen that they were entitled to a base hourly wage irrespective of their tips and thus would have been in a position to challenge Defendants' unlawful wage practices. Not only could they have challenged Defendants, they also would have been armed with proof that Defendants were not complying with the law, since their pay would not have corresponded with what the wage notices and statements themselves would have represented as Plaintiffs' entitlement to a base wage outside of tips. Such proof would have helped Plaintiffs vindicate their rights in court in the event Defendants would have refused to correct the problem voluntarily.    The deprivation of such notices and statements therefore constitutes a concrete injury.

59.    The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiffs and Class members. This delayed payment caused Plaintiffs and Class members to struggle to pay bills and other debts.

60.    Defendants knowingly and willfully failed to pay Plaintiffs and Class members their wages for all hours worked.

61.    Defendants knowingly and willfully failed to pay Plaintiffs and Tipped Subclass members any hourly wages and instead misappropriated their tips in order to pretend to do so.

62.    Defendants knowingly and willfully failed to pay Plaintiff ZHU and the Spread-of-Hours Subclass a spread of hours premium for shifts worked in excess of ten (10) hours in duration.

63.    Defendants knowingly and willfully failed to timely pay Plaintiff ZHU and the Late Payment Subclass on a weekly basis.

64.    Defendants knowingly and willfully operated their business with a policy of not providing employees proper wage notices, at the beginning of employment and annually thereafter, pursuant to the requirements of the NYLL.

65.    Defendants knowingly and willfully operated their business with a policy of not providing employees proper wage statements as required under NYLL.

66.    Due to Defendants' FLSA and NYLL violations, Plaintiffs, FLSA Collective Plaintiffs and Class members are entitled to recover from Defendants their unpaid minimum wages, unpaid overtime premiums, unlawfully retained gratuities, spread of hours premiums, liquidated damages for late payment of wages, liquidated damages for willful conduct, statutory penalties, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to the FLSA and the NYLL.

67.    Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiffs, FLSA Collective Plaintiffs, and Class members, in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

68.    Plaintiff ZHU realleges and reavers all the foregoing allegations of this complaint as fully set forth herein.

69.    At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff ZHU and FLSA Collective Plaintiffs are covered individuals within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a).

70.     At all relevant times, Defendants employed Plaintiff ZHU and FLSA Collective Plaintiffs within the meaning of FLSA.

71.     At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.

72.     At all relevant times, Defendants willfully violated Plaintiff ZHU's and FLSA Collective Plaintiffs' rights by failing to pay minimum wages due to Defendants' misappropriation of tips.

73.     At all relevant times, Defendants willfully violated Plaintiff ZHU's and FLSA Collective Plaintiffs' rights by failing to pay minimum wages due to Defendants' invalid tip credit.

74.     Records, if any, concerning the number of hours worked by Plaintiff ZHU and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff ZHU and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiff ZHU intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

75.     Defendants knew of and/or showed a willful disregard for the provisions of FLSA as evidenced by their failure to compensate Plaintiff ZHU and FLSA Collective Plaintiffs their proper wages, including their gratuities, when Defendants knew or should have known such was due.

76.     Defendants failed to properly disclose or apprise Plaintiff ZHU and FLSA Collective Plaintiffs of their rights under FLSA.

77.     As a direct and proximate result of Defendants' willful disregard of FLSA, Plaintiff ZHU and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to

FLSA.

78.     Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff ZHU and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of: (i) unpaid minimum wages, unpaid overtime premiums, unpaid gratuities, plus an equal amount as liquidated damages.

79.     Plaintiff ZHU and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorney's fees and costs pursuant to 29 U.S.C. § 216(b).

**COUNT II**

**<u>VIOLATION OF THE NEW YORK LABOR LAW</u>**

80.     Plaintiffs reallege and reaver all the above allegations of this complaint as fully set forth herein.

81.     At all relevant times, Plaintiffs and Class members were employed by Defendants within the meaning of NYLL, §§ 2 and 651.

82.     At all relevant times, Defendants knowingly and willfully operated their business with a policy and practice of not paying Plaintiffs and Tipped Subclass members the prevailing New York City minimum wage due to Defendants' misappropriation of tips.

83.     At all relevant times, Defendants knowingly and willfully operated their business with a policy and practice of not paying Plaintiffs and Tipped Subclass members the prevailing New York City minimum wage due to Defendants' invalid tip credit.

84.     At all relevant times, Defendants knowingly and willfully operated their business with a policy and practice of not paying Plaintiff ZHU and Spread-of-Hours Subclass the proper spread of hours premium for each workday that exceeded ten (10) or more hours.

85.    At all relevant times, Defendants knowingly and willfully operated their business with a policy of failing to pay Plaintiff ZHU and Late Payment Subclass members within seven (7) days of the end of the week in which they earned their wages and tips.

86.    At all relevant times, Defendants knowingly and willfully operated their business with a policy of failing to pay Plaintiffs and Class members for all hours worked during training period.

87.    At all relevant times, Defendants knowingly and willfully operated their business with a policy of illegally retaining tips.

88.    At all relevant times, Defendants knowingly and willfully operated their business with a policy of failing to keep track of daily tips earned and maintain records thereof, in direct violation of NYLL.

89.    At all relevant times, Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class members proper wage and hour notice, at date of hiring and annually thereafter, in direct violation of NYLL.

90.    At all relevant times, Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Tipped Subclass members proper tip credit notice, at date of hiring and annually thereafter, in direct violation of NYLL.

91.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements clearly indicating tip credit allowance for each payment issued to Plaintiffs and Tipped Subclass members, as required by NYLL § 195(3).

92.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements with every payment issued to Plaintiffs and Class members, as required by NYLL § 195(3).

93.    Due to Defendants' NYLL violations, Plaintiffs and Class members are entitled to recover from Defendants unpaid minimum wages, unpaid overtime premiums, unpaid spread of hours premium, illegally retained tips, compensation for late payment of wages, reasonable attorney's fees, liquidated damages, statutory penalties, and costs and disbursements of the action, pursuant to NYLL.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves, FLSA Collective Plaintiffs and Class members, respectfully requests that this Court grant the following relief:

a.    A declaratory judgment that the practices complained of herein are unlawful under FLSA and NYLL;

b.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.    An award of unpaid minimum wages, due to misappropriation of tips in violation of the FLSA and NYLL;

d.    An award of unpaid minimum wages, due to invalid tip credit in violation of the FLSA and NYLL;

e.    An award of unpaid wages due to wage theft during training period;

f.    An award of unpaid spread of hours premiums under the NYLL;

g.    An award of unlawfully retained gratuities under the NYLL;

h.    An award of liquidated damages and interest for each late payment of wages pursuant to NYLL § 191(1)(a)(i);

27

i.   An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages pursuant to 29 U.S.C. § 216;

j.   An award of statutory penalties as a result of Defendants' failure to comply with wage notice and wage statement requirements under NYLL;

k.   An award of statutory penalties, prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorney's and expert fees and statutory penalties;

l.   Designation of Plaintiff ZHU as Representatives of the FLSA Collective Plaintiffs;

m.   Designation of this action as a class action pursuant to F.R.C.P. 23;

n.   Designation of Plaintiffs as Representatives of the Class;

o.   Payment of a reasonable service award to Plaintiffs, in recognition of the services they have rendered and will continue to render to Class members, and the risks they have taken and will take; and

p.   Such other and further legal and equitable relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.

Date: September 20, 2024                    Respectfully submitted,
    New York, New York          By:    /s/ *C.K. Lee*

C.K. Lee, Esq.
**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
148 W. 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiffs,*
*FLSA Collective Plaintiffs*
*and the Class*